UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| NEW HORIZONS REHABILITATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00049-TWP-DML |
| | ) | |
| STATE OF INDIANA, and EXECUTIVE DIRECTOR, INDIANA DEPARTMENT OF HOMELAND SECURITY in his official capacity, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on a Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 filed by Plaintiff New Horizons Rehabilitation, Inc. ("New Horizons"). ([Filing No. 7](#).) New Horizons challenges the constitutionality of a zoning determination regarding a single-family dwelling unit that it intends to build and operate. The Defendants are the State of Indiana ("the State") and the Executive Directory, Indiana Department of Homeland Security in his official capacity ("DHS"). New Horizons alleges the State's zoning determination is in violation of the Equal Protection Clause of the United States Constitution; the Fair Housing Amendments Act, 42 U.S.C. § 3604(f); the Rehabilitation Act, 29 U.S.C. 794; and the American with Disabilities Act, 42 U.S.C. § 12132. New Horizons seeks to preliminarily enjoin DHS from classifying its proposed home as a Class 1 structure and a waiver from the fire suppression system requirement. On October 6, 2017, the Court conducted a hearing on New Horizons' Motion. For the following reasons, the Court **grants** New Horizons request for a preliminary injunction.

## I. BACKGROUND

These factual findings rest on a review of the partial record in the administrative proceeding and evidence and argument presented during the preliminary injunction hearing held on October 6, 2017. New Horizons is a non-profit organization that serves the needs of people with intellectual and developmental disabilities in the southeastern counties of Indiana. Among other things, New Horizons provides the following services for its clients: community based employment services through job training, placement and follow-along services, individualized home and community-based services, day program services, respite care, family support, pre-vocational training, and work opportunities. It also provides residential living options, with support, to a number of its clients through six homes that it owns and operates for adults with intellectual and developmental disabilities in three Indiana communities.

New Horizons plans to open a new supported living home for its disabled clients in Lawrenceburg, Indiana, in an area zoned for single-family residences. The house will be the permanent home for three unrelated adults with intellectual and developmental disabilities. New Horizons staff will be present 24 hours a day to ensure the safety of the residents and offer other support, however they will not live there. The residents live together because their care is paid for by Indiana's Medicaid Waiver which allows them to live outside of institutions. The planned Lawrenceburg home will be operated similar to the six existing supportive living homes, one of which is located in Lawrenceburg. All of the homes are designed to allow residents to live with the greatest level of independence as possible. The residents share expenses, cooking, eating, and activities. They use their Social Security Disability or Social Security Income to pay for their food and other personal expenses. The homes are not intended for transient stays and are designed as permanent housing for residents for as longs as they live. ([Filing No. 22-1 at 3](Filing No. 22-1 at 3).) There are no locks on the interior doors of the homes and the residents live as a family would. The houses are

completely indistinguishable from the other single-family houses in the neighborhoods. The planned home will be properly set off from the street and other property and will meet all the other requirements for a single-family residence under the ordinances, rules, and regulations of the City of Lawrenceburg.

Previously, New Horizons supportive living homes have been treated by building authorities as Class 2 single-family residential structures. In the past, New Horizons worked with local zoning and building authorities in the communities where the homes are located when seeking zoning approval to build and open single family-homes for its residents. New Horizons has a builder in place to construct the planned home and Lawrenceburg city officials agreed to treat New Horizons' planned home in the same manner as other single-family residences. ([Filing No. 22-1 at 5](#).) However, during the process, a Lawrenceburg employee informed New Horizons that the planned home would need to be approved by DHS because it was deemed a commercial building. ([Filing No. 22-1 at 6](#).) New Horizons was later informed that DHS had classified its planned supported living home as a Class 1 structure as opposed to being classified as a Class 2 structure.

The point of contention between the parties is that New Horizons' Class 1 structure classification means it must have an automatic fire suppression sprinkler system in the home which it estimates would cost at least $9,800.00. During the course of the proceedings, New Horizons requested a variance, as required, from DHS's Fire Prevention and Building Safety Commission ("the Commission") to waive the fire suppression system requirement, which the Commission denied giving rise to the failure to accommodate claim. ([Filing No. 34 at 11](#).) The Commission did not grant the variance because it found that New Horizons would not suffer a financial hardship

based on a percentage calculation of the cost of the fire suppression system in relation to the total cost of the home.

The area in which New Horizons plans to build the home is zoned for single-family residences. ([Filing No. 22 at 5.](#)) In order to obtain approval for the construction and opening of a Class 1 structure, a design release must be obtained from the Commission. *Id.* at 7. Class 1 structures also require the payment of filing and processing fees, along with the submission of detailed building plans. Class 2 structures—single or two dwelling unit structures—do not require a fire suppression sprinkler system and do not have the elevated design requirements and payment of fees that Class 1 structures require.

New Horizons asserts that DHS has subjected their zoning request to build a single-family dwelling unit in Lawrenceburg to elevated requirements in violation of the Equal Protection Clause to the United States Constitution, the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3604(f); the Rehabilitation Act, 29 U.S.C. 794; and the American with Disabilities Act ("ADA"), 42 U.S.C. § 12132. New Horizons filed a Complaint on March 14, 2017, and the Motion for Preliminary Injunction on the basis of the Class 1 designation on March 17, 2017. ([Filing No. 1](#); [Filing No. 7.](#)) Soon after the denial of the variance request, New Horizons filed Supplemental briefing in support of its Motion for Preliminary Injunction on July 17, 2017. ([Filing No. 34.](#))

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Granting a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)

(citation and quotation marks omitted). When a district court considers whether to issue a preliminary injunction, the party seeking the injunctive relief must demonstrate that:

> (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest.

*Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). The greater the likelihood of success, the less harm the moving party needs to show to obtain an injunction, and vice versa. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

### III. <u>DISCUSSION</u>

New Horizons challenges DHS's interpretation of the Indiana statutes in classifying its planned home as a Class 1 structure and asserts two claims. First, New Horizon argues that the variance denial was a failure to accommodate under all three federal statutes (ADA, FHAA, and the Rehabilitation Act). Secondly, it asserts it that DHS's Class 1 determination represents intentional discrimination in violation of the three statutes as well as equal protection.

Indiana Code § 22-12-1-4 provides that Class 1 structures are structures where any part of the building or structure is intended to be used or occupied by any of the following: (1) the public; (2) three or more tenants; or (3) one or more persons who act as employees of another.

Indiana Code § 22-12-1-5 provides that a Class 2 structure is a structure where any part of the building or structure is intended to contain only one dwelling unit or two dwelling units unless any part of the building or structure is regularly used as a Class 1 structure.

Indiana Code § 12-28-4-8 provides:

(a) A residential facility for individuals with a developmental disability:

5

(1) for not more than eight (8) individuals with a developmental disability; and
(2) established under a program authorized by IC 12-11-1.1-1(e)(1) or IC 12-11-1.1-1(e)(2);
is a permitted residential use that may not be disallowed by any zoning ordinance (as defined in IC 36-7-1-22) in a zoning district or classification that permits residential use.

(b) A zoning ordinance may only require a residential facility described in subsection (a) to meet the same:
(1) zoning requirements;
(2) developmental standards; and
(3) building codes'
as other residential structures or improvements in the same residential zoning district or classification.[1]

AS stated earlier, in order to obtain a preliminary injunction, New Horizons must show that it has a reasonable likelihood of success on the merits of the claims, that no adequate remedy at law exists, that it will suffer irreparable harm if a preliminary injunction is denied, that the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the State will suffer if the preliminary injunction is granted, and that the preliminary injunction will not harm the public interest. *Platinum Home Mortg. Corp.*, 149 F.3d at 726. The Court will address the first threshold factor before addressing the final four factors together.

A. **Standing and Immunity**

Before tackling the merits of this case, the Court turns to the State's argument that New Horizons lacks standing on its reasonable accommodation claim. The State argues there is no causal connection between the Commission's variance denial and the State of Indiana because neither the agency of DHS nor the Commission are defendants in this action. This argument is without merit. The Commission is housed within DHS as one of its Boards and Commissions.

---

[1] New Horizons concedes that it cannot raise a state law claim to enforce DHS to follow state law under *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984), but argues that it encapsulates what the FHAA, ADA, and Rehabilitation Act require in that the New Horizons home be treated identically to single-family homes housing a nuclear family.

DHS is charged with administering the statutory section within which the Commission is created. Ind. Code § 22-12-2-1. In addition, New Horizons exhausted the only remedy it had available in seeking a variance from the Commission. While the State may have Eleventh Amendment immunity against the ADA claim, Congress has expressly abrogated the State's immunity under the Rehabilitation Act; under these circumstances, standing exists and a preliminary injunction can issue.

B. **Likelihood of Success on The Merits**

In determining whether or not the plaintiff can demonstrate a reasonable likelihood of success on the merits, "[t]he court weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). "In the preliminary injunction context, a 'likelihood of success' exists if the party seeking the injunctive relief shows that it has a 'better than negligible' chance of succeeding on the merits." *Washington v. Indiana High School Athletic Ass'n, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999) (quoting *Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997).

    1. **Equal Protection**

The Fourteenth Amendment provides, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The United States Supreme Court has stated that the Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (citations and internal quotations omitted).

"Proof of [] discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265 (1977). "A statute, otherwise neutral on its face, must not be applied so as invidiously to discriminate. . ." *See Washington v. Davis*, 426 U.S. 229, 241 (1976). The parties agree that rational basis scrutiny must be employed, therefore the government's classification must only be rationally related to a legitimate government interest. *See, e.g., R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 406 (1992).

New Horizons argues that in classifying its planned home as a Class 1 structure, in contrast to how a single family residence would be classified, DHS has intentionally discriminated against disabled people in violation of the Fourteenth Amendment, FHAA, ADA, and the Rehabilitation Act.[2] New Horizons argues that its residents will constitute a family. DHS argues that it is applying a neutral rule in classifying New Horizons and that the government has a rational basis for the classification—safety. DHS explains that it classified New Horizons' planned home as a Class 1 structure for two reasons. First, New Horizons would house three people that are considered tenants as New Horizons operates more akin to a commercial landlord and accepts payments from Medicaid for them to live there. Second, it contends the employees' presence qualifies New Horizons' home as a Class 1 structure and that the employees exercise some degree of control over the residents.

New Horizons responds that DHS is classifying its planned home and its residents based on attributes that are direct results of their status as persons with disabilities. Further, New

---

[2] The Court limits New Horizons' intentional discrimination claim to an Equal Protection violation, as the ADA, FHAA, and Rehabilitation Act may all be violated by a failure to accommodate which will be addressed in Section III(B)(2). "Discrimination under both acts (Rehabilitation Act and ADA) may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington,* 181 F. 3d at 847.

Horizons argues the rules are not applied neutrally and offers hypotheticals in which DHS admitted it would classify a structure with similar characteristics to the New Horizons home as a Class 2 structure. As examples, New Horizons notes that foster homes that house children who pay to stay in the homes are not considered "tenants", and full-time caregivers coming into the home of a "normal" family are not deemed to create the employer-employee relationship giving rise to a Class 1 structure.

New Horizons argues that DHS's classification of them is a direct result of their residents' status and characteristics as persons with disabilities because other structures' Class 2 status is not destroyed by relationships similar to that of New Horizons and its residents. "Defendants have imposed burdens on the creation of single-family homes for persons with disabilities that are not applicable to the non-disabled, and they have not justified this disparate treatment." *Sharpvisions, Inc. v. Borough of Plum*, 475 F.Supp.2d 514, 525 (W.D. Penn. 2007) (holding neutral policy that subjected home for disabled to more stringent zoning requirements because of the presence of employees constituted intentional discrimination[3]).

The State points the Court to *Oxford House, Inc. v. Browning,* Civil Action No. 15-00282-BAJ-EAD 2017 WL 3140744 at *14 (M.D. La. July 24, 2017), in which a district court in Louisiana held that because a home for recovering alcoholics operated more like a family, the state had discriminated against the residents when it subjected their home to more stringent requirements. Although this holding was based in part on the social hierarchy the house had, a family need not necessarily operate on hierarchical terms such as in homes where a husband and wife with equal decision making authority and no dependents live. However, a hierarchy is not the only defining characteristic that a family may have, and New Horizons has shown that its

---

[3] The parties in *Sharpvisions* also disputed whether the home should be treated as a "family" home or "group" home.

permanent residents will operate like a family in their living arrangements and the bond that they will share.

In order for New Horizons' residents to be placed outside of institutions they have to live in a group setting so that payment can be made for their care and employees are able to monitor their care. Despite the technically neutral policies, the Court finds that DHS's interpretation of its statutes as applied to New Horizons violates the Equal Protection Clause because the classification subjects the residents to more stringent requirements that other single-family dwellings are not subjected to and the distinction is being made based on characteristics of the disability status of New Horizons' residents. New Horizons has shown a better than negligible chance of success on the merits of intentional discrimination under the Equal Protection Clause and DHS's interpretation would also likely qualify as intentional discrimination in violation of the three federal statutes. The evidence shows that New Horizons' residents will be permanent residents of the planned home as long as they live, their rental payments will not increase, and they will function socially as a family; therefore, they should be treated the same as nuclear families living in a single-family residence and classified as a Class 2 structure.

DHS contends that safety is the rational basis for the classification because the disabled can be particularly vulnerable in an emergency. New Horizons' planned home will have around the clock supervision, therefore the threat of an emergency is not a legitimate governmental interest because this supervision actually makes the home safer than single-family residences within the same zoning area that do not have this added protection and are not required to have a fire suppression system. The United States Supreme Court held that zoning ordinances that treat the disabled differently—based on special circumstances that their disability status imposes—than other permitted uses are largely irrelevant unless the disabled home would threaten legitimate

interests of a city in a way that other permitted uses would not. *City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 448 (1985). "This ordinance makes no attempt at individualizing its requirements to the needs or abilities of particular kinds of developmental disabilities." *Marbrunak, Inc. v. City of Stow, Ohio*, 974 F.2d 43, 47-48 (6th Cir. 1992) (holding ordinance's safety standards were not tailored to the needs and abilities of developmentally disabled people). The safety requirement being imposed on New Horizons is based on an irrational generalization based on disability status. Because New Horizons' planned home does not pose any special threat with regards to susceptibility to fires than other homes housing a nuclear family poses, and the statute at issue is not tailored at making homes safer for those with developmental disabilities, the State has not shown that it has a rational basis for the classification.

The Court finds that New Horizons has shown a reasonable likelihood of success on the merits on its intentional discrimination claim in violation of Equal Protection. Although the classification appears to be based on neutral policies, the Seventh Circuit has held that technically neutral classifications cannot be used as proxies to evade the prohibition of intentional discrimination. *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992) ("[T]he line between disparate treatment and disparate impact is actually finer than the above discussion suggests, particularly in the context of handicap discrimination.").

    2.    **<u>Reasonable Accommodation</u>**

The Commission's denial of the variance request, which would have waived the fire suppression system requirement, gave rise to New Horizons' failure to reasonably accommodate claim. New Horizons cites three federal statutes that this requirement violated: FHAA, Rehabilitation Act, and Title II of the ADA. Eleventh Amendment Immunity operates differently under the three statutes. New Horizons concedes that the Eleventh Amendment would preclude

11

suit against the State on the ADA claim. "That said, the Eleventh Amendment was not an obstacle for Barrett because damages are available against the State of Wisconsin under the Rehabilitation Act." *Barrett v. Wallace*, 570 Fed. Appx. 598, 600 n.1 (7th Cir. 2004). Nevertheless, Congress expressly made its intent clear that a state is not immune for a violation of Section 504 of the Rehabilitation Act of 1973 if a state program receives federal funding. *See* 42 U.S.C. § 2000d-7(a)(1). "Program or activity" is defined as "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or a local government." 29 U.S.C. § 794(b)(1)(A). Therefore, both DHS and the Commission fall under the definition of program or activity of a state or local government. It is undisputed that DHS is a recipient of federal funding; however, the State attempts to distinguish itself from DHS and the Commission for liability under the Rehabilitation Act. This argument lacks merit because the State is liable for damages if there is a Rehabilitation Act violation, as the Commission's operations fall under the umbrella of DHS, a state agency. Regardless of the Eleventh Amendment immunity, injunctive relief is available against Defendant DHS's Executive Director under the principles of *Ex Parte Young*, 209 U.S. 123, 159 (1908), which allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law.

For purposes of the reasonable accommodation claim, there are very subtle substantive differences between the three statutes. "The whole purpose behind the FHAA and ADA reasonable accommodation provisions is to prohibit [] local governments from applying land use regulations in a manner that will . . . give disabled people less opportunity to live in certain neighborhoods than people without disabilities." *Good Shepherd Manor Foundation, Inc. v. City of Momence,* 323 F.3d 557 (7th Cir. 2003). "[S]ubstantive law governing ADA and Rehabilitation

Act is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds." *Barrett*, 570 Fed. Appx. 600 n.1.

The FHAA requires a reasonable accommodation to zoning rules when necessary to provide a disabled person with equal opportunity to obtain housing. *Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 745 (7th Cir. 2006). The requirements for showing failure to reasonably accommodate are the same under the ADA and FHAA. *Good Shepherd Manor,* 323 F.3d at 561. "These statutes require a public entity to reasonably accommodate a disabled person by making changes in rules, policies, practices or services as is necessary to provide that person with access to housing that is equal to that of those who are not disabled." *Id*. To state a claim under the Rehabilitation Act, a plaintiff need only allege that (1) she is a qualified person, (2) with a disability and that the defendant denied her access to a program or activity because of her disability. *See Jaros v. Illinois Dept. of Corrections,* 684 F.3d 667, 672 (7th Cir. 2012) (holding that "refusing to make reasonable accommodations is tantamount to denying access"). Thus, all three statutes require reasonable accommodations to be made when the circumstances demand, and the Court will treat these issues as one. "In the zoning context, a municipality may show that a modification to its policy is unreasonable if it is so at odds with the purpose behind the rule that it would be a fundamental and unreasonable change." *Wisconsin Community Services, Inc.*, 465 F.3d at 753 (internal quotation marks and citations omitted).

It is important to note that New Horizons owns six other supported living homes, which in the past were not required to go through the Class 1 structure approval process nor install fire suppression systems. Further, the Commission's variance process is designed to address situations such as accommodation requests. New Horizons is concerned regarding the ripple effect that the

Class 1 classification will have on its other homes. The State responds that this injury is speculative.

New Horizons argues that a reasonable accommodation of waiving the commercial fire suppression system is required to allow their residents equal access to housing. The Court agrees that New Horizons has a likelihood of succeeding on the merits of its reasonable accommodation claim.

The State's position is that a fire sprinkler safety requirement does not completely prevent anyone from living in a house and that through the variance process it was determined that requiring New Horizons to pay the cost of the fire sprinkler system would not be overly financially burdensome. The State concludes by stating that New Horizons' planned home is being treated as a residence with three or more tenants which would be classified as a Class 1 structure regardless of the disabilities of New Horizons' residents. The State reasons that the more stringent requirement of the fire suppression system is due to the fact that the law assumes a certain coordination in emergencies when the structure is for only one or two dwelling units, *i.e.*, a Class 2 structure. Further, the State argues that the Class 1 structure designation does not deny equal access and opportunity, but represents the State's interest to neutrally make some structures safer because there is more risk.

The State cites support in that the Seventh Circuit has expressly disapproved of district court cases that have held that a city must, if requested by a handicapped person, waive its requirements for the installation of sprinklers because the requirements make homes more expensive for the handicapped—as for everyone. *Hemisphere Bldg. Co., Inc. v. Village of Richton Park*, 171 F.3d 437 (7th Cir. 1999). However, the Seventh Circuit also noted in that case that the duty of accommodation extends to rules and policies "that hurt handicapped people *by reason of*

*their* handicap, rather than that hurt them solely by what they have in common with other people, such as limited amount of money to spend on housing." *Id.* At 440 (citations omitted) (emphasis in original). This crucial distinction is exactly what New Horizons has argued—that the Class 1 classification treats homes for the disabled differently than homes for non-disabled single-unit family homes in that the disability status of New Horizons' residents is why their planned home is being classified as a Class 1 structure in the first place. This is discrimination that subjects New Horizons' residents to the fire suppression system requirement that other residential homes are not subject to. The Court agrees with New Horizons that its request for accommodation of the waiver of the fire suppression system would allow their residents equal access to housing. The fire suppression system is not merely a cost that makes New Horizons' home more expensive than other homes; rather, the Class 1 designation places an explicit restriction on homes for the disabled by reason of their handicap.

The State next argues that the accommodation request is unreasonable because New Horizons' accommodation would cause a fundamental alteration in the nature of the program in that New Horizons wishes to be exempt from safety requirements and to be treated the same as a nuclear family despite the tenant and employee issues. However, DHS does provide waivers of the fire suppression system to other group homes; they just determined that New Horizons did not qualify for the waiver based on the cost of the project in relation to the cost of the fire suppression system. This cannot be a fundamental alteration of the program since DHS offers the very waiver that New Horizons requests. Also, treating New Horizons' planned home as a Class 2 structure, would also not be a fundamental alteration as their other homes have been classified as Class 2 structures in the past. In any event, New Horizons has made valid points of similar situations where housing was deemed Class 2 despite having similar characteristics of New Horizons'

15

planned home. The distinction in classifications does provide disabled people with unequal (and arguably less) opportunity to have housing. Class 1 structures are subject to more stringent requirements, both in the approval process and building process, including the requirement of the fire suppression system. This burdensome process could cause fewer homes for the disabled to be built. In *Marbrunak, Inc. v. City of Stow, Ohio*, the Sixth Circuit held that zoning ordinances that place more stringent safety requirements on disabled people than other single-family residences violate the FHAA when the ordinance makes no effort to tailor the safety requirements to the particular disabilities of plaintiff's residents. 974 F.2d at 47. This is because the safety requirements were found to be based on generalized perceptions about the inability of developmentally disabled persons to live safely in a "normal" home.[4] *Id.*

This case boils down to whether the denial of the variance, thereby subjecting New Horizons to installing a fire suppression system under Class 1 structure requirements, denies New Horizons' residents equal opportunity and access to housing. New Horizons argues because of these Class 1 requirements, its residents have been prevented from living in the home because building has been stalled. New Horizons' planned home and other homes in the neighborhood are identical physically in all respects; the differences lie in the fact that this is a group living situation with employee supervision which is the only way that these residents can live independently outside of an institution. The accommodation that New Horizons seeks would allow their residents equal opportunity to enjoy and use a dwelling. Both Indiana and federal law require that this accommodation be made and the accommodation would not cause a fundamental alteration of any

---

[4] In this case, on appeal, the defendant raised the argument that the plaintiff had not exhausted all of its administrative remedies because the plaintiff did not seek a variance before filing suit in federal court. The Sixth Circuit did not address this issue because the district court failed to consider it; however, it noted that it should have been addressed by the district court. Nevertheless, the plaintiffs were allowed to proceed on the theory that the differential classification itself (without having sought a variance) was unduly burdensome on its face.

DHS or Commission program.[5] Accordingly, New Horizons has a reasonable likelihood of success on its reasonable accommodation claims under FHAA, the Rehabilitation Act, and ADA.

C. **Adequate Remedy at Law, Irreparable Harm, and Balancing the Harms**

On the other requirements of a preliminary injunction, the dispute between the parties concerns whether New Horizons suffers irreparable harm by the fire suppression requirement. New Horizons emphasizes that the denial of constitutional rights is irreparable harm in and of itself. *See, e.g., Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 578 (6th Cir. 2002) ("Courts have held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights."). New Horizons also argues that federal courts have held that there is a presumption of irreparable harm flowing from violations of statutes guaranteeing fair housing. *See, e.g. Marbrunak, Inc.,* 974 F.2d 43, 47 (6th Cir. 1992). Specifically, New Horizons argues that DHS's actions interfere with its ability to place its clients—who also suffer a distinct harm by the delay— in the Lawrenceburg home. New Horizons also states that an additional $9,800.00 cost for a fire suppression system is not an insignificant expense for a non-profit. New Horizons also expresses concern over what the Class 1 classification will mean for its other six homes that do not have fire suppression systems.

The State responds that New Horizons' alleged harm is monetary, which is not entitled to injunctive relief. The State argues that New Horizons has not stated that it cannot afford the fire suppression system; rather, it does not want to make the investment and budgeting choices do not warrant irreparable harm. The State also argues that New Horizons' concerns about its other homes are too speculative and not before the Court at this time. Further, the State distinguishes

---

[5] The court cannot order state officials to conform their behavior to state law under *Pennhurst,* 465 U.S. at 89.

17

this case from a zoning case in that New Horizons is not prevented from building its home and if the Court finds in New Horizons' favor at the end of this case then New Horizons would have the benefit of receiving quantifiable damages in the amount of the cost of the fire suppression system.

The Court determines that New Horizons' claim of denial of equal access to housing due to the more stringent Class 1 requirements represents irreparable harm. "[T]he greater the Director's prospects of prevailing are, the less compelling need be his showing of irreparable harm in the absence of an injunction." *Bloedorn v. Francisco Foods, Inc.,* 276 F.3d 270, 286 (7th Cir. 2001). Further, New Horizons has shown a likelihood of success on the merits of its constitutional claim, which weighs in favor an assumption of irreparable harm flowing from those violations. The Court agrees that New Horizons' concerns about its other six homes are too speculative as they have already been classified as Class 2 homes. As discussed at length above, although this case practically involves a fire suppression system requirement which represents a monetary cost, embedded therein is a constitutional issue including rights to equal opportunity and access to housing. Because equal opportunity and access to housing represent irreparable harm and New Horizons' residents do not have access to independent housing due to the Class 1 designation and accompanying fire suppression system requirement, a preliminary injunction is the appropriate remedy for there is no adequate remedy at law.

The State has not argued what irreparable harm it will suffer from an injunction, if any, but has argued that it also represents the three New Horizons residents because the State represents the public which includes the residents. While theoretically this may be true, New Horizons has met its burden to show that these residents would best be served by a preliminary injunction that would provide them equal access and opportunity to housing, which has been denied by the Class 1

classification. The purpose of Equal Protections and the three federal statutes ensuring the disabled access to housing would be served by a preliminary injunction.

## IV. CONCLUSION

Accordingly, New Horizons' Motion for Preliminary Injunction ([Filing No. 7](#)) is **GRANTED**. New Horizons is entitled to designation as a Class 2 structure and waiver of the fire suppression system during the pendency of these proceedings.

**SO ORDERED.**

Date: 27/10/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jan P. Mensz
ACLU OF INDIANA
jmensz@aclu-in.org

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Jefferson S. Garn
OFFICE OF THE INDIANA ATTORNEY GENERAL
jefferson.garn@atg.in.gov

Sara Teresa Martin
OFFICE OF THE INDIANA ATTORNEY GENERAL
sara.martin@atg.in.gov