**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| NEW HORIZONS REHABILITATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17-cv-00049-TWP-DML |
| | ) |
| STATE OF INDIANA, EXECUTIVE | ) |
| DIRECTOR, INDIANA DEPARTMENT OF | ) |
| HOMELAND SECURITY in his official capacity, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on cross-motions for summary judgment. Plaintiff New Horizons Rehabilitation, Inc. ("New Horizons") initiated this action alleging Defendants, the State of Indiana (the "State") and the Executive Director of the Indiana Department of Homeland Security ("DHS") in his official capacity (collectively, "Defendants"), issued a zoning decision that violates the Equal Protection Clause of the Fourteenth Amendment; the Rehabilitation Act, 29 U.S.C. § 794 (the "Rehabilitation Act"); the Fair Housing Amendments Act, 42 U.S.C. § 3604(f) ("FHAA"); and the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"). ([Filing No. 1 at 9](#).) On October 27, 2017, this Court granted New Horizons a preliminary injunction and enjoined DHS from classifying New Horizons' proposed dwelling as a Class 1 structure. ([Filing No. 43](#).) In the fall of 2018, New Horizons filed a Motion for Summary Judgment ([Filing No. 60](#)) and Defendants filed a Cross-Motion for Summary Judgment ([Filing No. 66](#)).  For the following reasons, the Court **grants in part and denies in part** each parties' Motion for Summary Judgment. The result of this ruling **grants** New Horizons a permanent injunction.

# I.  BACKGROUND

For the most part, the material facts are undisputed.  New Horizons is an Indiana not-for-profit corporation that assists persons who have intellectual and developmental disabilities in the southeastern Indiana counties of Ripley, Dearborn, Ohio, Franklin, Decatur, and Switzerland. (Filing No. 22-1.)  It provides a variety of a services for its clients, including community-based employment services through job training, placement, and follow-along services, individualized home and community-based services, day-program services, respite care, family support, pre-vocational training and work opportunities in an industrial setting.  *Id.* at 1-2.  New Horizons owns six supported living homes located in Lawrenceburg, Batesville, Peppertown, and Oldenburg, Indiana. (Filing No. 60-1 at 11, 42.)

No more than four adults are allowed to live in a home full time, and they are assisted by New Horizons staff. (Filing No. 22-1 at 2.) Between five and seven staff are employed at each home, and a staff person is on-site 24 hours a day, seven days a week, but staff does not live at the home. (Filing No. 26-2 at 22; Filing No. 60-1 at 29.) The homes are recognized by the Bureau of Developmental Disabilities within Indiana's Division of Disability and Rehabilitative Services as "supported living service arrangements." (Filing No. 22-1 at 2.)

The residents of New Horizons' homes have either physical or mental impairments that substantially limit one or more of their daily activities so that they cannot live on their own and require the assistance of staff.  *Id.* at 3; Filing No. 60-1 at 22-23.  New Horizons offers residential living as an option for clients who wish to live with the greatest possible degree of independence. (Filing No. 22-1 at 2.)  The staff assures the safety of the residents of the homes and provides support to assist them in acquiring and maintaining skills to attain as much self-sufficiency as possible. *Id.*

New Horizons' homes are single-family dwellings and comply with all local land-use requirements imposed on single-family residences. *Id.* at 3. They are located in neighborhoods and are physically indistinguishable from the surrounding single-family homes. *Id.* They provide permanent housing for the residents and are not intended for transient stays. *Id.* The residents of the homes live much like a nuclear family would—they eat together, grocery shop together, engage in activities together, pool their money, and live together with no locks on their bedroom doors. *Id.*; Filing No. 26-2 at 64-65, 68; Filing No. 60-1 at 18. Residents of these homes live with each other for years and form attachments and close relationships similar to a family and genuinely care for each other. (Filing No. 60-1 at 65-66.) New Horizons considers the residents to be families and attempts to create homes in which the residents feel that they are family. *Id.*

Because they are disabled, New Horizons' residents receive either Social Security Disability ("SSD") or Supplemental Security Income ("SSI") payments (Filing No. 22-1 at 3-4.) They use these payments to pay for their food, shelter costs, and other personal items and expenses. *Id.* New Horizons is the representative payee for those residents' who are unable to write checks and personally manage their benefits. (Filing No. 60-1 at 9-10.) A portion of residents' SSD or SSI payments go to New Horizons pursuant to a lease that it has with each resident. *Id.* at 59; Filing No. 22-1 at 10. New Horizons does not rent to the public at large; it only assists persons with an intellectual or developmental disability. (Filing No. 60-1 at 38-39.) It screens potential residents to make sure they are compatible with one another. *Id.* at 54-55. Residents may stay in a New Horizon home for their entire life and would never see an increase in rent, even if their SSD or SSI payments increase. (Filing No. 26-2 at 64, 70.) New Horizons is a certified "Medicaid home provider," meaning it receives some of its funding from Medicaid and its residents are eligible for Medicaid benefits. (Filing No. 60-1 at 43-44.)

Before a resident moves into a New Horizon home, a contractor hired by the Bureau of Developmental Disabilities will complete an inspection check list to make sure the overall environmental conditions are satisfactory. *Id.* at 49-51, 96-97. Among other things, the inspections ensure there is a working fire extinguisher in each home. *Id.* at 96. All New Horizons' residences have fire extinguishers, smoke detectors, and $CO_2$ detectors. Prior to the opening of any home, New Horizons invites the local fire department to come to the home and do a walk through to familiarize themselves with the layout and to do a visual check for any risks. (Filing No. 60-3.) Once the home is opened, residents will engage in five safety drills on a staggered schedule—drills for fire, bomb, medical, tornado, and intruder. (Filing No. 60-2 at 20-21.) During the fire drill, which may occur in the evening hours after the residents' bedtime, staff members will assist the resident to get to a designated area across the street. *Id.* at 16-17. It takes about five minutes to get to the designated area, but only about half that time for the residents to get out of the house. *Id.* at 20.

In 2013, New Horizons was donated an unimproved piece of real estate in Lawrenceburg, Indiana, on the condition that it would build a supported living home for adults with intellectual and developmental disabilities on the property. (Filing No. 22-1 at 4.) The donors are parents of an adult who will reside in the home once it opens. *Id.* at 4-5. As with all New Horizons homes, the residents will be persons with intellectual or developmental disabilities and are limited in one or more of their major life activities. *Id.* at 5. The property is located within what Lawrenceburg's zoning ordinance characterized as an "R-1" district, which is zoned for single, two, and multi-family homes. *Id.* The house will be indistinguishable from the homes surrounding it, and it will conform to all the requirements Lawrenceburg imposes on single-family homes. *Id.*

New Horizons initially struggled with the city of Lawrenceburg to zone the home in the same manner as all other single-family residences. After litigation with the city, New Horizons persuaded Lawrenceburg to zone its proposed home as a single-family residence. *Id.* at 5-6; *New Horizons Rehabilitation, Inc. v. City of Lawrenceburg*, No. 4:16-cv-00169-RLY-DML (S.D. Ind.).

While New Horizons was attempting to negotiate with Lawrenceburg, its Executive Director, Marie Dausch ("Dausch"), was informed that the planned home had to be approved by DHS because it was deemed to be a commercial building. (Filing No. 22-1 at 5-6.) She was also informed that plans for the home had to be drawn up by an architect, as opposed to the builder who had drawn up the then-existing plans. *Id.*

In 2015, New Horizons paid an architect $2,200.00 to make changes to the original plans to conform to what DHS required and the plans were submitted to the Plan Review Section of the Division of Fire and Building Safety within DHS. *Id.* at 6; Filing No. 26-2 at 58-59. That department issued the architect a construction design release specifying that plans for a fire suppression system had to be submitted before the release could be issued. (Filing No. 22-1 at 6.) New Horizons had never previously been required to put such a system in any of the other homes it operated, including an existing home in Lawrenceburg. (Filing No. 22-1 at 6.) Dausch attempted to submit a variance request so that the home could be built without the costly commercial fire suppression system. *Id.* But she did not understand the process of filing the request and therefore abandoned it. *Id.*

On January 26, 2017, New Horizons settled its lawsuit with the city of Lawrenceburg, which agreed to treat the proposed New Horizons home the same way it would treat any single-family dwelling for zoning purposes. *Id.* at 5. But in February 2017, DHS informed Lawrenceburg officials that the planned home was a Class 1 structure that had to be submitted to DHS for review

and release. ([Filing No. 22-2 at 56](#).) Of primary concern to New Horizons was the Class 1 requirement that New Horizons must install a commercial fire suppression system in the home. ([Filing No. 26 at 5](#); [Filing No. 22-2 at 38-39](#).)

New Horizons applied for a variance from the Fire Prevention and Building Safety Commission ("Commission") in hopes that they would not be required to install a commercial fire suppression system in the proposed home. ([Filing No. 34-3](#).) Appearing before the Commission, Dausch reported that she had fielded an estimate of $12,000.00 for a fire-suppression system. *Id.* at 2. The Commission advised her that estimate was too high—the cost for the fire-suppression system in the proposed home should be between $6,000.00 to $8,000.00 *Id.* at 3. One commissioner explained that a variance would only be granted for financial hardship and if the cost of the fire-suppression system was less than 10% of the total cost of building the home, no variance would be granted in any case. *Id.* The Commission tabled New Horizons' request so that Dausch could obtain a new estimate. *Id.*

Dausch contacted the builder New Horizons was planning to use and asked for an estimate on the cost of the fire-suppression system. *Id.* The builder estimated the cost to be $9,800.00. *Id.* Dausch returned to the Commission with her new estimate, but the Commission denied her request for a variance. *Id.* at 4. The commissioners told Dausch that the builder had quoted her a price for the wrong sprinkler system, and the correct estimate would not be more than $9,800.00. *Id.* at 3-4. The Commission denied her request because to obtain a variance because the cost of the fire-suppression system would have to be over 10% of total building costs, but here the cost was about 5% of total building costs. *Id.* at 4.

New Horizons filed its Complaint for Declaratory and Injunctive Relief and Damages against the Defendants on March 14, 2017. ([Filing No. 1](#).) The Court granted New Horizons'

motion for preliminary injunction on October 27, 2017. (Filing No. 43.) The home continued construction during this litigation and was scheduled to be open and ready for occupancy in October or November of 2018. (Filing No. 61 at 6; Filing No. 60-3). It will not contain a fire suppression system, although it will contain fire extinguishers and smoke and $CO_2$ detectors. (Filing No. 60-3.) And, like other New Horizons homes, the local fire department will be invited to tour and inspect it. *Id.* In late November 2016, shortly before New Horizons settled its dispute with Lawrenceburg, the estimated cost of building the home was $207,900.00. *Id.* at 2. By December 2017, the estimate had risen to $236,100.00. *Id.* Additionally, because DHS labelled the proposed home a Class 1 structure, New Horizons had to pay $2,200.00 in architect expenses that it would not have incurred had the home been classified as a Class 2 structure. (Filing No. 26-2 at 59.)

In the fall of 2018, the parties filed these cross-motions for summary judgment. (Filing No. 60; Filing No. 66.) Because of the preliminary injunction, New Horizons was able to build the new home in Lawrenceburg without being subject to the Class 1 structure requirements, particularly the requirement that a commercial fire suppression system be installed. (Filing No. 61 at 32.) New Horizons seeks a permanent injunction to prevent DHS from imposing the Class 1 requirements, even after the home is open. *Id.* It is also seeking monetary damages resulting from the delay in building the home. Defendants on the other hand, deny any discrimination, challenge New Horizons standing and contend that awarding damages would in no way benefit the disabled individuals that the relevant federal statutes intend to protect. (Filing No. 69 at 29.)

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is only appropriate by the terms of Rule 56 where there exists "no genuine issue as to any material facts and … the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

A court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id.*

### III.     DISCUSSION

As previously stated, for the most part, the material facts are not in dispute. New Horizons challenges the constitutionality of the zoning determination regarding its single-family dwelling unit that it built and operates in Lawrenceburg.  It alleges the State's zoning determination is in violation of the Equal Protection Clause of the United States Constitution; the Fair Housing Amendments Act, 42 U.S.C. § 3604(f); the Rehabilitation Act, 29 U.S.C. 794; and the American with Disabilities Act, 42 U.S.C. § 12132.   New Horizons seeks a permanent injunction and damages.   Defendants seek summary judgment arguing that New Horizons lacks standing, is unable to prove discrimination and dispute the validity and foundation for the damages that New Horizons proposes.

### A.     The Statutes

New Horizons makes claims under the Rehabilitation Act, 29 U.S.C. § 794; the Fair Housing Amendments Act, 42 U.S.C. § 3604(f); and the Americans with Disabilities Act, 42 U.S.C. § 12132. (Filing No. 1 at 9.) The Fair Housing Act, enacted in 1968, prohibits housing discrimination on the basis of race, color, religion, or national origin. The FHAA, passed in 1988, extends protections to persons with disabilities. The current Fair Housing Act makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. *Id.* § 12132. And, under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability … shall, solely by reasons of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The Seventh Circuit has said that "all three statutes apply to municipal zoning decisions," and the briefing does not address whether they apply to zoning decisions made by the state. *Valencia v. City of Springfield*, 883 F.3d 959, 967 (7th Cir. 2018). But New Horizons also brings a claim under the Fourteenth Amendment, and the Supreme Court has made clear that the ADA is a proper vehicle for vindicating Fourteenth Amendment rights violated by a state. *See U.S. v. Georgia*, 546 U.S. 151, 159 (2006) ("insofar as Title II [of the ABA] creates a private cause of action for damages against the States for conduct that *actually* violated the Fourteenth Amendment, Title II validly abrogates state sovereign immunity"). The Court need not conduct a separate analysis for claims brought under the FHAA, ADA, and Rehabilitation Act because "the same analysis generally applies under all three statutes." *Valencia* at 967.

**B.    Zoning**

Indiana law divides structures into two classes. Ind. Code § 22-12-1-4, -5. Class 1 is the more commercial of the two classes, and a structure within it is:

> A building or structure that is intended to be or is occupied or otherwise used in any part by any of the following:
>
> (A)    The public.
> (B)    Three (3) or more tenants.
> (C)    One (1) or more persons who act as the employees of another.

*Id.* § 22-12-1-4. In contrast, single-family homes are considered Class 2 structures under Indiana law. *Id.* § 22-12-1-5.

Generally, no person can begin construction on a Class 1 structure until the DHS's Division of Fire and Building Safety has issued a design release. 675 Ind. Admin. Code 12-6-3. To qualify for a design release, an applicant must have plans and specifications prepared by a registered

architect or professional engineer. Ind. Code § 22-15-3-2(3). On the other hand, no approval from any state agency is required to build a Class 2 structure. (Filing No. 22-2 at 13-14.) While Class 1 structures must conform to the Commercial Building Code[1], Class 2 structures need only comply with the Indiana residential code. *Id.* at 19-20.

Builders of Class 1 structures must go through more complicated procedures than Class 2 builders. Someone building a Class 1 structure must apply to the Division of Fire and Building Safety within DHS, which carries a filing fee of $75.00 and a processing fee of the greater of $75.00 or five cents for every square foot of the floor area of the structure. *Id.* at 16. That application can take up to 20 days to be ruled upon, and the Division of Fire and Building Safety can refuse to issue it and require the applicant to remedy code compliance issues. *Id.* at 15. An applicant unhappy with the Division's ruling can appeal to an administrative law judge or seek a variance from the Indiana Fire and Safety Building Commission. *Id.* at 7, 15-16. Seeking a variance carries an additional fee. *Id.* at 21.

It is these differences and others that form the backbone of New Horizon's discrimination claims. New Horizons argues it should not be required to clear the extra application-related hurdles required for a Class 1 structure or bring its proposed home in line with the Commercial Building Code by installing a commercial fire suppression system. It asserts its home is no different from the single-family homes surrounding it except for the people who will occupy it. And these occupants, who are prevented by their disabilities from living in their own homes, should not have to undergo an onerous and expensive process that their neighbors need not bother with because their self-sufficiency allows them to live in their home with their biological families.

---

[1] The Commercial Building Code is an umbrella that covers many other codes, including the Indiana Plumbing Code, the Indiana Mechanical Code, the Indiana Electric Code, the Indiana Fire Code, the Indiana Fuel Gas Code, the Indiana Energy Conservation Code and the Indiana Swimming Pool Code where applicable. (Filing No. 22-2 at 19.)

Defendants, not surprisingly, sees things differently. It asserts that these requirements exist to keep occupants of Class 1 structures safe. The legislature made the decision to require a commercial fire suppression system in certain buildings because those buildings had historically presented a danger to the people who used them. Defendants argue that New Horizons is claiming discrimination because it simply does not want to pay for the safety feature that the law requires. (Filing No. 69 at 12.)

Before reaching the merits of New Horizons' discrimination claim, the Court must first address two preliminary issues raised by the Defendants. The Defendants first argue that New Horizons lacks standing to bring this suit because its clients—the eventual residents of the home— are the party that will suffer from the onerous requirements of erecting a Class 1 structure and the interests of New Horizons and its clients are not sufficiently aligned. Second, the Defendants asks the Court to grant summary judgment in its favor because New Horizons did not exhaust its administrative remedies by appealing the Division of Fire and Building Safety's decision to an administrative law judge.

## C. **Standing**

Defendants argue that New Horizons lacks standing because "it cannot convincingly argue that it necessarily speaks for its clients or, at the very least, that its interests and the interests of its clients are fully aligned." *Id.* at 13. According to Defendants, New Horizons' clients "may think very differently about the reasonableness of a tradeoff between additional fire safety and a relatively small cost, particularly where that person will not be responsible for the cost." *Id.* New Horizons erred by failing to include in the record "specific information about its clients or direct testimony from them or their guardians." *Id.* As a result, Defendants assert that, New Horizons' arguments contain "an overbearing thread of paternalism" and it asks for "special treatment from

the normal rules to be allowed to build *a less safe residence* for its clients." *Id.* at 13-14 (emphasis in original).

New Horizons contends that it has standing to sue the Defendants because it has suffered an injury in fact, the Defendant's conduct caused its injury, and that injury is redressable by the Court. (Filing No. 73 at 6.) New Horizons points out that the FHAA allows any "aggrieved person"—that is any person who "(1) claims to have been injured by a discriminatory housing practice or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur"—to bring suit. 42 U.S.C. §§ 3613(a)(1)(A), 3602(i). Courts have also allowed organizations in New Horizons' position to bring suit under the ADA, Rehabilitation Act, and Equal Protection Clause. New Horizons cites *Dr. Gertrude A. Barber Center, Inc. v. Peters Twp.*, 273 F. Supp. 2d 643 (W.D. Pa. 2003).

*Barber Center* found standing in a similar case, explaining that "[c]ourts have clearly held that a person or company in the business of providing housing for handicapped persons that has been prevented from doing so due to alleged discrimination, has standing to sue under the FHA." *Id.* at 651. That assertion derives from cases like *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ("Congress intended standing under [the FHA] to extend to the full limits of Article III," therefore "the courts … lack the authority to create prudential barriers to standing in suits brought under that section.") (internal quotations omitted) and *Growth Horizons, Inc. v. Delaware Cnty.. Pa.*, 983 F.2d 1277, 1282 n. 6 (3d Cir. 1993) ("The Supreme Court has made clear what seems evident from this language—that 'an aggrieved person' does not necessarily have to be the person discriminated against."). *Barber Center* also found the plaintiff had standing to bring discrimination claims under the ADA and Rehabilitation Act because "the FHA analysis applies equally to the Barber Center's other claims of unlawful discrimination." 273 F. Supp. At 652

(citing *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 45-46 (2d Cir. 2002), *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)).

Defendants have not made a persuasive argument that the Court should reconsider the interpretation of the FHA and other statutes offered by these federal courts. In fact, Defendants do not clearly argue there is a heightened standing requirement for claims brought under those statutes. In its response and cross-motion, Defendants cite only one case in its section on standing, which recites the general elements required for standing in federal court: "injury, causation, and redressability." (Filing No. 69 at 14 (citing *1000 Friends of Wisconsin, Inc. v. U.S. Dep't of Transp.*, 860 F.3d 480, 483 (7th Cir. 2017)). But Defendants fail to say which of those elements New Horizons does not satisfy. It merely argues that New Horizons' claims are based on discrimination, but New Horizons' clients may not feel like they have been discriminated against. This argument is not based on caselaw or the language of the statutes at issue; therefore, it fails. New Horizons has standing to bring suit against the Defendants under the FHA and other similar acts because it claims to have been injured by a discriminatory housing decision and is thus an "aggrieved person" under the FHA.

**D.** **Failure to Exhaust Administrative Remedies**

Defendants next argue the Court should grant summary judgment in its favor because New Horizons failed to exhaust its administrative remedies under Indiana's Administrative Orders and Procedures Act. Ind. Code § 4-21.5 *et seq*. This argument is unsupported by law because plaintiffs are not required to exhaust their administrative remedies in order to bring discrimination claims under the FHAA, ADA, Rehabilitation Act, or Equal Protection Clause of the Fourteenth Amendment. "Neither Title II of the ADA nor the Rehabilitation Act include a requirement that a plaintiff exhaust his or her administrative remedies before filing suit in federal court." *Smith v.*

*City of Philadelphia*, 345 F. Supp. 2d 482, 486 (E.D. Pa. 2004). Likewise, "[i]t is well settled that plaintiffs are not required to exhaust FHAA claims." *Cohen v. Twp. Of Cheltenham, PA*, 174 F. Supp. 2d 307, 320 n.9 (E.D. Pa. 2001) (citing 42 U.S.C. § 3613(a)(2) (allowing for private enforcement of FHAA "whether or not [an administrative] complaint has been filed")). And no exhaustion of administrative remedies is required to bring an equal protection claim, which arises out of the Constitution via 42 U.S.C. § 1983. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies.")

Because no law required New Horizons to exhaust its administrative remedies before bringing this suit, DHS's failure to exhaust argument fails.

## E.    Merits

Having resolved those preliminary matters, the Court turns to the merits. "A plaintiff may prove a violation of the FHA, ADA, or Rehabilitation Act by showing (1) disparate treatment; (2) disparate impact; or (3) a refusal to make a reasonable accommodation." *Valencia*, 883 F.3d at 967. "For each respective theory, the same analysis generally applies under all three statutes." *Id.* New Horizons argues DHS violated the statutes both by failing to provide a reasonable accommodation and intentionally discriminating against New Horizons' clients, constituting disparate treatment. (Filing No. 61 at 20.) It also argues the different standards imposed on New Horizons because its clients have intellectual or developmental disabilities violates the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 30.

1. **The FHAA, ADA, and Rehabilitation Claims**

     a)     **Refusal to Make a Reasonable Accommodation**

The FHA prohibits discrimination in housing decisions. For purposes of the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).[2] "The basic elements of an FHAA accommodation claim are well-settled." *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006). "The FHAA requires accommodation if such accommodation (1) is reasonable, and (2) necessary, (3) to afford a handicapped person the equal opportunity to use and enjoy a dwelling." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002). The burden is on the plaintiff to show the accommodation is reasonable on its face, and once it does the burden shifts to the defendant to demonstrate unreasonableness or undue hardship. *Id.*

New Horizons argues that "DHS denied a reasonable accommodation here by denying the variance request that would have allowed the home to open without a commercial fire suppression system." (Filing No. 61 at 21-22.) It argues that if the variance had been granted, it would have allowed the proposed home "to be identical to its neighbors and that would have put the residents of the home on the same footing, and subject to the same requirements, as 'normal families.'" *Id.* at 22. New Horizons asserts that the residents of these supported living homes cannot live safely and independently in a residential neighborhood because they need supportive services, or they

---

[2] The ADA also has a "reasonable accommodation" requirement. 42 U.S.C. § 12131(2). "The requirements for reasonable accommodation under the ADA are the same as those under the FHAA." *Oconomowoc* at 783. The definition of reasonable accommodation in the Rehabilitation Act is the same as that in the ADA. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 497 (7th Cir. 1996). "All three statutory schemes embrace the concept that, in certain instances, the policies and practices of covered entities must be modified to accommodate the needs of the disabled." *Wis. Cmty. Servs.* at 746.

cannot afford it. *Id.* If they were not intellectually or developmentally disabled, they would be able to live on their own in Class 2 structures and would not need to incur the cost of installing a commercial fire suppression system. *Id.* at 23. The accommodation is necessary, therefore, in order to put people with intellectual or developmental disability on equal footing with everyone else. *Id.*

And New Horizons argues the accommodation is reasonable because it would not impose any financial or administrative burden on DHS. *Id.* It argues the residents of the home will behave like a family and would be no less safe than any other family in the neighborhood, none of whom have commercial fire suppression systems installed in their homes. *Id.* at 24. New Horizons also contends that the accommodation would not cause a fundamental change to DHS's program. *Id.* at 25.

Defendants respond that the accommodation is not reasonable. (Filing No. 69 at 17.) It argues that it would incur a cost by granting the variance, but the cost would not be financial. *Id.* DHS, "an organization tasked with providing for public safety," incurs a cost by abrogating that duty. *Id.* Although it is not calculable the way installation of a fire suppression system can be quantified in dollars, it "can be tangible in the number of potential lives saved and harm averted." *Id.*

This argument does not address the key component of New Horizons' argument—that the requirement of a sprinkler system is discriminatory. The Court has no doubt that DHS ultimately wants to make Hoosiers as safe as possible. But DHS sees no reason to require sprinkler systems in single-family homes, a requirement that would impose costs on many Hoosiers but would also make residential communities safer. The issue is not whether installing a sprinkler system would make New Horizons' residents safer—no one denies that it would. But this case is about whether

or not New Horizons' residents should be forced to shoulder the cost of a sprinkler system when they would not have to shoulder that cost if they were able to continue living with their families.

DHS views the consequences of not installing a sprinkler system in this home as a cost. "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." *Oconomowoc* at 784. New Horizons has made a prima facie showing that the proposed accommodation is reasonable because the cost DHS identifies is one it incurs with every single-family home. It loses some measure of safety so that residents of Class 2 structures need not install cumbersome safety features. And DHS has failed to rebut that showing with evidence that New Horizons' proposed home, without a sprinkler system, would pose a greater safety risk to its residents or surrounding homes than any other Class 2 structure. The costs to public safety are proportional to the accommodation because DHS makes the same tradeoff in every single-family home that it does not require to install a sprinkler system.

Defendants make a slippery slope argument—if the Court finds this accommodation reasonable, New Horizons and other organizations like it "could skirt all kinds of safety requirements by using the threat of a discrimination lawsuit as a cudgel against any enforcement of laws designed to ensure public safety." ([Filing No. 69 at 18](#).) But this argument broadens New Horizons' complaint. New Horizons is not attempting to circumvent *all* public safety laws, only those that do not apply equally to its proposed home and the homes of other families who are not disabled. New Horizons does not, for example, challenge the Indiana law requiring all dwellings to have at least one smoke detector because the ADA, FHAA, and Rehabilitation Act do not support such a challenge. Ind. Code § 22-11-18-3.5. Safety laws that do not result in discrimination are outside the scope those acts and remain so regardless of how the Court resolves

this case. The Court is not worried about a flood of litigation from disabled people or other groups protected by the FHAA challenging all laws designed to ensure public safety.

Defendants cite *Hemisphere Bldg. Co., Inc. v. Vill. Of Richton Park*, 171 F.3d 437, 441 (7th Cir. 1999), which says that "[w]e thus disapprove the district court cases in this circuit which have held that a city must, if requested by a handicapped person, waive its requirements for the installation of sprinklers because the requirements make homes more expensive for the handicapped—as for everyone." In *Hemisphere*, a developer argued he was entitled to a special-use permit allowing wheelchair accessible multi-unit residences that did not comply with density requirements because complying with the requirements would result in fewer units, making them more expensive for wheelchair-bound tenants. The Seventh Circuit found in the defendant's favor because "the duty of reasonable accommodation in 'rules, policies, practices or services [applies] to rules, policies, etc. that hurt handicapped people *by reason of their handicap*, rather than that hurt them solely by the virtue of what they have in common with other people, such as a limited amount of money to spend on housing." *Id.* at 440 (emphasis in original). The law at issue in *Hemisphere* applied equally to everyone, as the Court explained. *Id.* (the law "merely raises the cost of housing [and] hurts everyone who would prefer to pay less….") The plaintiff in that case was not asking the Court to eliminate "a discrimination against a group," he was asking it to compel "a subsidy for that group." *Id.*

The facts in *Hemisphere* are not analogous to this case, in which New Horizons alleges that the law defining Class 1 and Class 2 structures has a disparate impact on disabled people who cannot live on their own. New Horizons is not asking for a subsidy—it is not asking DHS to waive the requirement that it install a sprinkler system because that installing a sprinkler system is expensive and it has limited money for housing. It asks DHS to waive the requirement of a

sprinkler system because people who are capable of living on their own are not subject to that requirement, which results in *de facto* discrimination against people with intellectual and developmental disabilities.

This case is more like *Oconomowoc*, in which a proposed group home challenged a city ordinance declaring, "Small foster homes and community living arrangements shall not be located within 2,500 feet of each other and their cumulative capacities shall not exceed one percent of the population of an aldermanic district." 300 F.3d at 778. The Seventh Circuit found that the plaintiffs' "range of residential living choices is restricted by their disabilities." *Id.* at 787. By drawing a circle around each group home within which no other group home could operate, the zoning ordinance precluded "new group homes from opening in most of the City of Milwaukee, thus preventing disabled adults who cannot live without some support from residing in almost all residential neighborhoods within the City." *Id.* The plaintiffs in that case established that the accommodation they requested—a variance from a zoning board—was reasonable and necessary to provide them an equal opportunity to enjoy housing in a residential community. *Id.* Because the City of Milwaukee failed to show the requested accommodation was unreasonable or disproportionately expensive, the Seventh Circuit affirmed the district court's grant of summary judgment in favor of the plaintiffs.

Like the plaintiffs in *Oconomowoc*, New Horizons' clients cannot live in a single-family home as defined by Indiana law "either because they need more supportive services, for financial reasons, or both." *Id.* at 784. And just as the plaintiffs in *Oconomowoc* were "denied the equal opportunity to live in a residential neighborhood" solely because of their disability, here New Horizons' clients' disabilities prevent them from living in a Class 2 structure. *Id.* They therefore may not bear the lower regulatory burden those structures afford their residents.

Defendants point out that the sprinkler system would cost just under $10,000.00, while New Horizons has an annual budget of over $4 million. (Filing No. 69 at 19.) According to Defendants, "it is entirely up to New Horizons whether to dip into its over $4,000,000 annual budget to install a system that will provide greater safety to its clients." *Id.* at 12. But the Court does not see the relevance of this fact. The idea that whether the State's zoning policy is discriminatory depends on the resources of the target of that policy finds no support in the statutes or caselaw. If a policy is discriminatory, it is discriminatory whether the plaintiff has a lot of money or none at all. As New Horizons points out, to accept that a discriminatory action is not discriminatory if the wronged party has enough money to overcome the discrimination would allow the government to impose all kinds of small discrimination on wealthy people of protected classes. (Filing No. 73 at 14-15.) The objective of the ADA, FHAA, and Rehabilitation Act is to stop discrimination, and the acts do not distinguish between those who can afford to face discrimination and those who cannot.

Defendants also argue that New Horizons' clients make a choice to live in the proposed home, while they could choose to live elsewhere. (Filing No. 69 at 21.) The Court is not persuaded. The evidence shows that New Horizons' clients do have choices: some live in apartment buildings, some with their family, and others in homes like the one at issue here. (Filing No. 66-3 at 18, 46, 61-62.) However, DHS ignores the choices New Horizons' clients do not have, including the choice to live alone in a Class 2 structure. Evidence shows that two of the clients New Horizons expects to house in this new Lawrenceburg home are adults who had been living with their aging parents who are struggling to meet their needs. (Filing No. 22-1 at 8-9.) The Court does not agree with the suggestion that it would be easy for these people to find housing, or that they have many options to choose from. Federal courts have noted that individuals with intellectual or

developmental disabilities are limited in their choice of housing.  *See, e.g., Groome Res. Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 202 (5th Cir. 2000) ("the discriminatory effect recognized by Congress resulted from the fact that the disabled were not able to live safely and independently without organized, and sometimes commercial, group homes").  Moreover, telling a disabled person that she should go live in an apartment building or long-term care facility because the law makes that easier on her is the very discrimination New Horizons complains of.   The FHAA would be toothless if a defendant could avoid liability by pointing to the other housing options a plaintiff has in different types of housing or different areas of the city.

The Defendants urge the Court to compare New Horizons' proposed home not to the single-family homes that surround it, but instead to "a residence with three or more non-related tenants," such as "college roommates in a big city [who] choose to live together because they like the company and would not otherwise be able to afford rent." (Filing No. 69 at 21.) This comparison is inaccurate.  As Defendants point out, college students choose to live together by "virtue of what they have in common with other people, such as a limited amount of money to spend on housing." *Hemisphere Bldg.*, 171 F.3d at 440. But individuals with intellectual and developmental disabilities live in supported living homes because of what sets them apart from others—they are limited in one or more of their major life activities. It is not a lack of resources that necessitate homes like the one New Horizons is attempting to provide, it is the disability itself.

The designated evidence supports New Horizons' claim that its requested accommodation—a variance to build its proposed home without a commercial fire suppression system—is reasonable. The Defendants have not met their burden of showing that the requested accommodation is unreasonable or would present undue hardship for the State.  Therefore, the Court **grants** New Horizons' Motion for Summary Judgment as to its reasonable accommodation

claim under the ADA, FHAA, and Rehabilitation Act. The Court **denies** the Defendant's Cross-Motion for Summary Judgment as to this claim.

### b) <u>Disparate Treatment</u>

Disparate treatment under the ADA, FHAA, and Rehabilitation Act "involves a showing of intentional discrimination, provable via either direct or circumstantial evidence." *Nikolich v. Vill. of Arlington Heights, Ill.*, 870 F. Supp. 2d 556, 562 (N.D. Ill. 2012); *see Tyler v. Runyon*, 70 F.3d 458, 467 (7th Cir. 1995) (Rehabilitation Act); *Kormoczy v. Sec'y., U.S. Dep't of Hous. & Urban Dev.*, 53 F.3d 821, 823 (7th Cir. 1995) (Fair Housing Act); *Smith v. Hous. Auth. of S. Bend*, 867 F. Supp. 2d 1004, 1016 (N.D. Ind. 2012) (ADA). New Horizons argues that the "commercial or non-commercial" distinction between Class 1 and Class 2 structures "is both illusory and in violation of the above statutes." (Filing No. 61 at 29.) It alleges that the real distinction is between "nuclear family" and "non-nuclear family." *Id.* at 28. The real distinction is laid bare by the State's decision to classify family homes housing three or more foster children as Class 2 structures because they resemble a nuclear family, despite the fact that the parents receive funding for housing foster children. *Id.* at 28-29.

Defendants respond that Indiana's zoning scheme is facially neutral—they treat all buildings with three or more tenants as Class 1 commercial structures. (Filing No. 69 at 26.) They argue that even if New Horizons could show a discriminatory impact upon people with intellectual and developmental disabilities, it cannot show that the State had a discriminatory purpose when drafting and enacting the zoning statutes. *Id.* As to the issue of foster children, DHS contends that it "does not consider foster children to be tenants." *Id.* at 7. It provides no basis for the distinction.

The Seventh Circuit has warned that a technically neutral classification cannot be used "as a proxy to evade the prohibition of intentional discrimination." *McWright v. Alexander*, 982 F.2d

222, 228 (7th Cir. 1992). The Seventh Circuit has also said that a plaintiff making a disparate treatment claim "need not prove impermissible intent." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999). This rule follows the Supreme Court's understanding of the motivation behind the Rehabilitation Act: "Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 296 (1985).

Defendants argue that the statute is facially neutral. In other words, Indiana's zoning statute does not explicitly single out disabled people like the laws at issue in the cases New Horizons cites in its brief.[3] The Court agrees. Although the zoning scheme as applied imposes regulatory costs on people with intellectual and developmental disabilities, the statute does not target those people specifically, and the Court has no reason to think any animus against disabled individuals motivated the language of the statute.

However, New Horizons makes the argument that the statute is not applied consistently because family homes with three or more foster children are Class 2 structures but its proposed supported living facility for three intellectually or developmentally disabled adults is treated as a

---

[3] New Horizons' brief includes the following string cite:

> *See, e.g.*, *Marbrunak, Inc. v. City of Stow, Ohio*, 974 F.2d 43, 46-48 (6th Cir. 1992) (zoning ordinances imposing various safety requirements on single-family residences occupied by developmentally disabled persons, but not on residences occupied by families without disabilities, unlawfully discriminate against persons with disabilities in violation of the FHAA); *Sharpvisions[, Inc. v. Borough of Plum]*, 475 F. Supp. 2d [514] at 523-25 [(W.D. Pa. 2007)] (zoning ordinance that did not treat a three bedroom home for persons with disabilities, currently housing just one resident, as a single family dwelling for purposes of local zoning was invalid as, among other things, subjecting plaintiff to disparate treatment); *Children's Alliance v. City of Bellevue*, 950 F. Supp. 1491, 1495-1500 (W.D. Wash. 1997) (zoning ordinance that, among other things, imposed additional burdens on staffed group homes for children who generally have disabilities that are not imposed on "family" residences is facially discriminatory demonstrating discriminatory intent.

([Filing No. 61 at 28](#).)

Class 1 structure.  The Defendants response that it simply does not consider foster children to be "tenants" under the statute is misguided.  They essentially admit what New Horizons alleges—that DHS treats intellectual and developmentally disabled persons differently from others without any justification.[4]  DHS did not provide a definition of the word "tenant" that it applies systematically, which includes foster children but not New Horizons' clients.  Nor do Ind. Code §§ 22-12-1-4 or -5 define the word "tenant."[5]

On this record, the Court finds that Indiana's facially neutral zoning scheme is being used as a proxy to evade prohibition of intentional discrimination, as proscribed by the Seventh Circuit. Without being held to a strict definition of the word "tenant," DHS is able to treat foster children differently from adults with intellectual and developmental disabilities and offer no basis for the distinction other than the arbitrary declaration that New Horizons' clients are tenants, but foster children are not.  The different classification for homes with three foster children and homes with three disabled adults constitutes disparate treatment. The Court therefore **grants** New Horizons' Motion for Summary Judgment as to its claim of disparate treatment under the ADA, FHAA, and Rehabilitation Act. The Court **denies** the Defendants Cross-motion for Summary Judgment as to this claim.

### 2.    The Equal Protection Claim

Each State is prohibited from denying "to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV, § 1. In *City of Cleburne, Tx. v. Cleburne Living*

---

[4] Nor do Defendants address the six other homes operated by New Horizons, none of which were required to go through the Class 1 structure approval process or install fire suppression systems. The Court does not see any distinction between New Horizons' existing homes and the one it currently seeks to build.

[5] In the chapter of the Code regarding smoke detectors, "tenant" is defined as "an individual who occupies a rental unit (1) for residential purposes; (2) with the landlord's consent; and (3) for consideration that is agreed upon by both parties." Ind. Code § 22-11-18-1. The Court will not presume this definition applies to Ind. Code §§ 22-12-1-4 and -5. But even if the Court did presume, it is not clear that the definition includes New Horizons' clients but excludes foster children.

*Center*, 473 U.S. 432, 446-47 (1985). The Supreme Court determined that legislation distinguishing classes based on mental disability "must be rationally related to a legitimate government purpose" to survive an Equal Protection challenge. Under rational-basis review, a statute is constitutional if there is a "reasonably conceivable state of facts that could provide a rational basis" for the statute. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013). A policy reviewed under a rational-basis framework bears "a strong presumption of validity," and the challenged must "negate every conceivable basis that might support it." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Both parties agree that rational-basis review applies. (Filing No. 61 at 30-31; Filing No. 69 at 25.)

New Horizons alleges there is no rational basis supporting Indiana's zoning laws as applied to its clients. Defendants declare that "the State is concerned about coordination during emergencies and the safety of everyone that could be involved during a fire, including rescue personnel." (Filing No. 69 at 26.) But New Horizons calls this concern irrational, because "there is round-the-clock supervision in [New Horizons'] homes … they have fire extinguishers, smoke and $CO_2$ detectors, as well as periodic safety drills." (Filing No. 61 at 32.)

The Court has no doubt that the zoning statute, on its face, withstands rational-basis scrutiny. Nothing in the statute explicitly discriminates against the intellectually or developmentally disabled. The statute merely divides structures into commercial and non-commercial, and one line it uses to divide the two is whether the house three or more tenants. Requiring commercial structures to have additional safety features is reasonable and New Horizons does not argue otherwise.

The question is whether, as applied to New Horizons, there is a rational basis for the scheme. The Court finds that the rational basis Defendants offer for the zoning scheme—safety—

is sufficient to defeat an Equal Protection challenge. Although New Horizons presents a compelling argument that its residents are better-prepared than the average family for safety hazards such as fires, it has not shown that there is no rational reason for code. The question for the Court is whether there is a reasonably conceivable set of facts that could justify the law as applied to New Horizons' proposed home. A situation where residents of New Horizons' home and emergency response personnel are endangered by the lack of a sprinkler system is one such set of facts that New Horizons did not negate. Laws have a strong presumption of validity in a rational-basis analysis, and New Horizons failed to overcome that presumption.

Therefore, New Horizons' Motion for Summary Judgment is **denied** as to its Equal Protection claim. Defendant's Cross-Motion for Summary Judgment is **granted** as to this claim.

**3.** **Remedy**

Having granted New Horizons' Summary Judgment Motion as to its claims under the ADA, FHAA, and Rehabilitation Act, the Court must determine the appropriate remedy. New Horizons seeks both a permanent injunction and money damages.

**a)** **Permanent Injunction**

Having prevailed on its claims under the ADA, FHAA, and Rehabilitation Act, New Horizons need only satisfy the other elements required for a permanent injunction: irreparable injury for which there is no adequate remedy at law, the balance of harms tips in favor of the plaintiffs, and the public interest would not be disserved the grant. *Indiana Protection and Advocacy Servs. Comm'n v. Comm'r, Indiana Dep't of Corrections*, 2012 WL 6738517, at *24 (S.D. Ind. Dec. 31, 2012). As the Court explained in its Entry Granting New Horizons' Motion for Preliminary Injunction, New Horizons meets each of those elements. (Filing No. 43.) Therefore, the Court grants New Horizons' motion for a permanent injunction. DHS is

permanently **ENJOINED** from enforcing the requirements of a Class 1 structure on New Horizons' Lawrenceburg, Indiana home indefinitely. The home is to be treated as a Class 2 structure.

### b) Damages

New Horizons seeks damages in the amount of $30,400.00.[6] Defendants argue they cannot be liable for damages because they enjoy sovereign immunity under the Eleventh Amendment against New Horizons' ADA and FHAA claims. Even if the Court embraced this argument, Defendants would still owe damages under the Rehabilitation Act. Congress expressly made its intent clear that a state is not immune for a violation of Section 504 of the Rehabilitation Act of 1973 if a state program receives federal funding. *See* 42 U.S.C. § 2000d-7(a)(1).

Defendants also argue that New Horizons "is not entitled to damages because the recovery of damages would not benefit it [sic] clients." (Filing No. 69 at 28.) In support of this argument, they cite *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277 (7th Cir. 2003). In *Discovery House*, a for-profit drug treatment facility operator, after winning a state court judgment reversing a zoning determination that had precluded it from opening a drug-rehabilitation clinic, it brought suit seeking lost profits for an asserted violation of the ADA and Rehabilitation Act. The Seventh Circuit concluded that the plaintiff did not have standing to receive lost profits because this remedy would not "directly benefit the disabled." *Id.* at 281. In contrast, New Horizons argues that it is not a for-profit corporation, and any money damages it received would directly benefit its

---

[6] In late November 2016, New Horizons obtained an estimate that said building the home would cost $207,900.00. But for DHS, which caused New Horizons to delay building, it would have locked in that price. By December 2017, shortly after this Court issued its preliminary injunction, New Horizons obtained an estimate that construction of the home would cost $236,100.00. New Horizons seeks to recover the $28,200.00 difference and the $2,200.00 it spent on the services of a professional architect to satisfy requirements erroneously imposed on it by DHS. While Defendants argue that they do not owe these damages, they do not dispute the amount of damages at issue.

clients, who were aggrieved by the State's failure to grant a variance in New Horizons' favor. (Filing No. 73 at 23-24.)

The Court is not persuaded by either of the Defendants arguments in opposition. Accordingly, the Court awards damages in favor of New Horizons in the amount of $30,400.00.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS in part and DENIES in part** New Horizons' Motion for Summary Judgment. (Filing No. 60). Summary judgment is **granted** on New Horizons' claims for failure to accommodate and disparate treatment under the ADA, FHAA, and Rehabilitation Act. Summary judgment is **denied** on New Horizons' Fourteenth Amendment Equal Protection claim. The Court **GRANTS in part and DENIES in part** Defendants, the State of Indiana and the Executive Director of the Indiana Department of Homeland Security's Cross-Motion for Summary Judgment (Filing No. 66). Summary judgment is **denied** as to New Horizons' claims for failure to accommodate and disparate treatment under the ADA, FHAA, and Rehabilitation Act and it is **granted** on Defendants' Cross-Motion as to New Horizons Fourteenth Amendment Equal Protection claim.

The Court **permanently enjoins** the Defendants from treating New Horizons' Lawrenceburg, Indiana home as a Class 1 structure or imposing on it any of the costs or burdens associated with Class 1 structures. The Court **awards** New Horizons damages in the amount of $30,400.00. This Order resolves all claims as to all parties. Final judgment pursuant to Federal Rule of Civil Procedure 58 will issue in a separate order.

**SO ORDERED.**

Date: 7/19/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Jefferson S. Garn
INDIANA ATTORNEY GENERAL'S OFFICE
jefferson.garn@atg.in.gov

Winston Lin
INDIANA ATTORNEY GENERAL'S OFFICE
winston.lin@atg.in.gov

Aleksandrina Penkova Pratt
INDIANA ATTORNEY GENERAL'S OFFICE
aleksandrina.pratt@atg.in.gov